In re Kimberly M. BROWN, Debtor.

Kimberly M. Brown, Plaintiff,

v.

USA Group Loan Services, and U.S. Department of Education, Defendants.

Bankruptcy No. 98–44243.
Adversary No. 99–4008–1.

United States Bankruptcy Court,
W.D. Missouri,
Western Division.

May 26, 1999.

Tracy L. Robinson, Kansas City, MO, for plaintiff.

Mark J. Schultz, Judith M. Strong, Kansas City, MO, for defendant.

### MEMORANDUM OPINION AND ORDER

JERRY VENTERS, Bankruptcy Judge.

Kimberly M. Brown, the Debtor in these Chapter 7 proceedings, filed a Complaint seeking a discharge, on the basis of undue hardship, of a consolidated student loan that has a balance of more than $54,000.00. United Student Aid Funds, Inc., the holder of the consolidated student loan, opposed the discharge and filed a Counterclaim seeking judgment against Brown for the balance owed. For the reasons set out below, the Court finds that excepting the consolidated student loan from discharge would place an undue hardship on the Debtor and her three minor children and therefore will grant the Debtor a discharge on the basis of her Complaint and will deny United Student Aid Funds the relief requested in its Counterclaim.

This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

### FACTS

While attending college at National College in Kansas City between September 1988 and June 1992, Ms. Brown ("Brown" or "Debtor") obtained a series of small student loans that enabled her to attend college and obtain a bachelors degree in business administration. Just before graduating from college in 1992, on the advice of a financial counselor at the college, Brown consolidated all of her student loans into a single loan of $30,772.00, because she was advised that it would be easier for her to repay a single consolidated loan than it would be to repay several smaller loans. The parties stipulated that the amount now owed on the student loan debt is $54,048.84 (as of February 28,

1999) and that interest is accruing on the balance at the rate of $13.30 per day.

Brown had two small children when she began college in 1988, and a third child was born in 1991. Brown worked approximately 20 hours per week while she was attending college, in addition to caring for her children. Her husband (the father of the third child) abandoned her in early 1993, but Brown has not filed for a divorce.

Brown works as a secretary at the Kansas University Medical Center in Kansas City, Kansas, where she does typing, filing, and other secretarial tasks. She began working at the Medical Center part-time in late 1987 and became a full-time employee in June 1992 after graduating from college. Over the years, Brown has had various part-time jobs at different times during the year, but she is not working part-time now because working part-time puts too much stress on her.

In 1997, Brown earned gross wages from the Medical Center of $18,327.23, and also earned about $1,400.00 working at two part-time jobs. In 1998, she had gross wages of $19,129.23 from the Medical Center and earned about $3,500.00 from her part-time jobs.

The Debtor has three sons, who were 6, 11, and 14 years old when the Debtor filed her bankruptcy petition on October 2, 1998. The monthly living expenses for Brown and her three sons were listed in Schedule J of the bankruptcy schedules as follows:

| | | |
|---|---|---|
| Rent or home mortgage payment | | $277.00 |
| Utilities: Electricity and heating fuel | | 150.00 |
| | Water and sewer | 40.00 |
| | Telephone | 50.00 |
| | Cable TV | 60.00 |
| Food | | 450.00 |
| Clothing | | 60.00 |
| Laundry and dry cleaning | | 30.00 |
| Medical and dental expenses | | 50.00 |
| Transportation | | 100.00 |
| Recreation | | 40.00 |
| Taxes: Personal Property License | | 25.00 |
| Hair cuts, postage, misc. | | 50.00 |
| Children's school supplies, lunches, and activities | | 150.00 |
| | | $1,532.00 |

Brown lives in government subsidized housing, and since the bankruptcy was filed, her rent has increased to $304.00 per month. She has also purchased a vehicle, a 1990 Ford Taurus, and she must pay $135.00 a month in a car payment and $50.00 a month for insurance on the car. Brown obtained a $3,000.00 loan at 8% interest to purchase the car. She drives the car back and forth to work and uses it to take her children to their activities and for other purposes.

Each of Brown's three children has a different father. All of the fathers have been ordered to pay child support but have not been doing so. One father was ordered to pay child support of $83.00 per month, another father was ordered to pay child support of $150.00 a month, and the third father was ordered to pay $210.00 a month in child support. The Debtor admits that she is owed thousands of dollars in past-due child support, and she testified that she has tried to collect the child support through the Child Support Enforcement Unit and by taking action on her own, but has never been able to collect any significant amount of child support because the fathers usually quit their jobs when they are found and garnishments or executions are run.

One of Brown's sons has been diagnosed as having attention deficit disorder, but he does not presently require medication. The children's medical expenses are covered by Medicaid, and Brown has health insurance coverage through her employment, for which she pays at least a part of the premium. If Brown's income were to increase significantly, she would possibly lose the Medicaid coverage for her children, and the amount of her subsidized rent would likely increase.

The Debtor testified that she has no prospects of promotion at her present employment and that, as a state employee, she receives only minimal pay increases each year, depending on state appropria-

tions. Brown testified that she has applied for numerous jobs and has placed her resume on the Internet, but that she has never found any other jobs that would pay her significantly more than the job she presently has. She intends to sit for a Postal Service entry examination in June 1999, but she is not overly optimistic that she will obtain a Postal Service job. She has taken the examination once previously and scored in the 80s, but never received a call from the Postal Service about a job, and she believes that she would have to score above 90 before she would even be considered for employment there.

Brown tried once to repay her student loans, in 1993 or 1994, when she was living with her parents, but was unable to continue the payments. Brown testified that she had never been advised by USAF or anyone else holding the student loan that she might be eligible for a 25-year payment program because of her income and financial circumstances, and counsel for USAF acknowledged that it was most likely that USAF and other agencies or entities holding the loans had never advised the Debtor of such a repayment program.

## DISCUSSION

Section 523(a)(8) of the Bankruptcy Code (11 U.S.C. § 523(a)(8)) provides that educational or student loans are excepted from the general discharge provisions of the Code "unless excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). There is no dispute that the consolidated loan now held by USAF is an educational loan that falls within the coverage of this provision. Since "undue hardship" is not defined in the Code, it is left to the bankruptcy courts to determine, on a case-by-case basis, whether the facts warrant a discharge of the student loan debt. *In re Rose*, 215 B.R. 755, 763 (Bankr. W.D.Mo.1997); *Andrews v. South Dakota Student Loan Assistance Corporation (In re Andrews)*, 661 F.2d 702, 704 (8th Cir.

1981). "The bankruptcy court must determine whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on his/her student loan without reducing what the debtor and his/her dependents need to maintain a minimal standard of living." *In re Wegfehrt*, 10 B.R. 826, 830 (Bankr.N.D.Ohio1981).

Although a number of differing tests have been developed by the courts over the last two decades to be used in determining the existence of undue hardship in these student loan cases, the test that applies in the Eighth Circuit is the "totality of the circumstances test" enunciated in *Andrews v. South Dakota Student Loan Assistance Corporation (In re Andrews)*, 661 F.2d 702 (8th Cir.1981). See *Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127 (8th Cir. BAP 1999). The totality of the circumstances test established by *Andrews* requires an analysis of (1) the debtor's past, present, and reasonably reliable future financial resources, (2) calculation of the debtor's and his or her dependents' reasonable necessary living expenses, and (3) any other relevant facts and circumstances surrounding the particular bankruptcy case. *Andresen*, at 140. The Court will now turn to an analysis of the evidence in this case, applying the factors in the *Andrews* test.

### 1. The Debtor's current and future financial resources

As set out above, Brown earned $18,327.23 in 1997 and $19,129.23 in 1998 at her full-time job as a secretary. Her earnings in 1997 were slightly above the poverty threshold of $16,400.00 for a family of four, as established by the U.S. Census Bureau. While at first blush it might appear that Brown—as a college graduate, 31 years old and in good health—should be able to earn more than she has been earning, the Court believes that it is unlikely that Brown will be able to increase her income to any significant degree in the

future. Brown has placed her resume on the Internet and has applied for numerous other positions, but has found that none of them offered her a prospect of earning more than her present job. She does not have any particular skills that might be relied on for advancement in her present position, and there are no promotions in prospect. Additionally, it appears to the Court that Brown has limited latitude in her employment options because of the fact that she is a single mother with three school-age children and she has limited transportation capabilities. For example, when she filed her bankruptcy petition, the Debtor did not have a car and relied on public transportation. Now, she has a 9–year–old car which she values at just $2,000.00. Neither mode of transportation affords the Debtor much flexibility in searching out or moving to other employment in a geographically large metropolitan area like Kansas City.

Counsel for USAF spent considerable time and energy at hearing emphasizing that the Debtor might be able to obtain more income by collecting the back-due child support owed her, but the Court believes this is an unrealistic expectation. The Debtor testified about the difficulties she has had collecting even minimal amounts of child support in the past; even the state agencies that are experienced in collecting child support have been largely unsuccessful in obtaining any significant payments for the Debtor. The Debtor has not received a payment of child support from any of the fathers of her three children since January 1994. In view of the history of nonpayment of support, it is totally unrealistic to expect that Brown will obtain a significant amount of child support in the future.

For these reasons, the Court finds that the Debtor is not likely to have a significantly larger income in the future from which she could pay her student loan debt.

## 2. The Debtor's necessary reasonable living expenses.

The Court has set out above the living expenses as listed by the Debtor in her bankruptcy schedules. As already noted, the Debtor has recently obtained a 9–year–old car that she uses to get back and forth to work and to transport her sons to their various activities. Including the car payment and insurance, plus the increase in her rent payment since the filing, the Debtor has monthly living expenses of approximately $1,830.00 a month, which is scarcely sufficient to adequately support one adult and three growing boys. In fact, several of the expenses listed by the Debtor in her schedules are unreasonably low. As just one example, the Debtor lists only $60.00 a month for clothing, which seems particularly unrealistic for four people, three of whom are teenage or pre-teenage boys. The Debtor qualifies for subsidized housing, resulting in monthly rent expense of only $304.00; however, that rent will increase if the Debtor receives a higher income. Likewise, although she currently qualifies for Medicaid coverage for her children, this coverage is only available to low-income persons.

The Court has examined the Debtor's living expenses in detail and finds nothing extravagant or wasteful in them. On the contrary, the Court believes that many of the expenses are unrealistically low and would certainly be substantially higher if only the Debtor had a higher income. Most likely, the Debtor's living expenses will decrease somewhat in future years as her children reach majority and leave home, but such a decrease is many years in the future, since one child is 11 and the youngest is just 6 years old. The Court believes that the expenses shown by the Debtor are reasonable and necessary for her and her children's support.

## 3. Other unique circumstances in this particular case

The Court does not find that there are other unique circumstances requiring consideration in this case.

## CONCLUSION

After consideration of all of the evidence in this case, the Court finds and concludes

that it would work an undue hardship on the Debtor and her dependents to except the Debtor's student loan, now having a balance of more than $54,048.84, from discharge. The Court is convinced that the Debtor is unlikely to obtain employment in the future that will substantially increase her income and make it possible for her to make any meaningful payments on the student loan debt. The Debtor's income presently is just slightly more than the poverty threshold, and she receives public assistance in the form of subsidized rent and medical care for the children. The Debtor would likely lose those benefits if her income increases appreciably. Therefore, even an increase in income would not mean that Brown would have extra income to apply to the student loan debt; instead, she would simply have increased rent and medical costs. The Debtor supports herself and three children on $1,800.00 a month or less, apparently by keeping her family living expenses unrealistically low. Interest on the student loan debt, meanwhile, continues to accrue at the rate of more than $400.00 a month, an amount that the Debtor is patently incapable of paying. In fact, the Court is convinced that requiring the Debtor to pay even $50.00 a month on the student loan debt would work an undue hardship on the Debtor for the foreseeable future.

The purpose of the bankruptcy discharge is to give honest and deserving debtors a fresh start in their financial lives. The Debtor in this case would be deprived of that fresh start, and would be saddled with a hopelessly large debt, if the student loan debt owed to USAF is not discharged.

For the foregoing reasons, it is

**ORDERED** that the Debtor's Complaint to Determine Dischargeability be and is hereby SUSTAINED, and the Debtor is hereby granted a discharge of the student loan debt owed to United Student Aid Funds, Inc. It is

**FURTHER ORDERED** that the relief sought by United Student Aid Funds, Inc., in its Counterclaim is DENIED.

The Clerk shall prepare a judgment in accordance with this Opinion.

**SO ORDERED.**