# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 01-6042MN

---

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Nanci Anne Long, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Nanci Anne Long, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff-Appellee, | * | District of Minnesota |
| | * | |
| v. | * | |
| | * | |
| Educational Credit Management Corp., | * | |
| | * | |
| Defendant-Appellant, | * | |
| | * | |
| United States Department of Health and | * | |
| Human Services, | * | |
| | * | |
| Defendant. | * | |

---

Submitted: May 2, 2003
Filed: May 8, 2003

---

Before HILL, SCHERMER and FEDERMAN, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Educational Credit Management Corporation ("Appellant") appealed the bankruptcy court order discharging the student loan obligation of debtor Nanci Ann Long ("Debtor"). This court upheld the bankruptcy court's order under a clearly erroneous standard.[1] After further appeal, however, the Eight Circuit Court of Appeals has remanded the matter for a *de novo* review by this Court.[2]

## ISSUE

The issue on appeal is whether the Debtor's student loan obligation to Appellant should be discharged as imposing an undue hardship on the Debtor pursuant to 11 U.S.C. § 523(a)(8). We conclude that under the totality of circumstances test such obligation will not impose an undue hardship on the Debtor and therefore should not be discharged.

## BACKGROUND

The Debtor is a single woman with a ten year old child. She was thirty-nine years old at the time of the trial in this matter. The Debtor attended Northwest College of Chiropractic and financed her education, in part, through the student loans which are the subject of this dispute. She graduated and became a licensed Doctor of Chiropractic in 1987. She practiced chiropractic medicine from 1987 through 1995, first working for others, then starting her own practice with another doctor.

In 1993, the Debtor began to suffer "flu-like" symptoms. Her condition deteriorated over the next two years. In 1995 she transferred her practice to another

---

[1] *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 271 B.R. 322 (B.A.P. 8th Cir. 2002).

[2] *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549 (8th Cir. 2003).

doctor.  Her chiropractic license subsequently lapsed.  In 1997 she sought medical treatment for her condition.  The Debtor eventually began a regimen of medication which has enabled her to regain employment.

In the fall of 1998, the Debtor enrolled in Metropolitan State University to pursue a degree in human services and a minor in social gerontology.  She hopes to pursue a career in hospice counseling.

The Debtor works approximately thirty-two hours per week as a laboratory manager at a community college nine months of the year.  She earns $12.59 per hour.  Her annual income is $14,000.00, or $1,166.66 per month.  She lives with her parent and pays them between $500 and $600 per month to cover rent, utilities, car payment, car insurance, health insurance, cellular telephone, child care, and food.  She also pays $50 per month for medical insurance co-payments, personal items, and toiletries; $100-$275 per month for gasoline; $100 per month for dining out, groceries, and entertainment; and $80 per month for her daughter's private school tuition.  She also pays her tuition which varies in price between $500 and $800 depending on the course.

At the time of trial, the Debtor owed the Appellant approximately $61,800, including principal, interest, and collection costs, on consolidated student loans which had totaled $35,322.81 in 1987.

The Debtor also has three student loans payable to the United States Department of Health and Human Services ("DHHS") guaranteed by the Health Education Assistance Loan Program in the amount of $14,700 which the bankruptcy court determined to be non-dischargeable (the "HEAL Loans").

3

The Debtor qualifies for the Income Contingent Repayment Plan offered by the Department of Education through the William D. Ford Loan Consolidation Program. Pursuant to the Income Contingent Repayment Plan, the Debtor's monthly payments to cover the loan to Appellant and the HEAL Loan would be $54.00 based on her current level of income. If the Debtor participated in this program for twenty-five years, any remaining balance would be cancelled at that time. The Debtor is aware of the Income Contingent Repayment Plan but did not apply for it.

On May 31, 2000, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. She filed a complaint seeking a determination that her indebtedness to the Appellant as well as her indebtedness to the DHHS on the HEAL Loan should be discharged as an undue hardship. The bankruptcy court determined that the HEAL Loan should not be discharged but that the loan to the Appellant should be discharged. The Appellant appealed to this Court which affirmed the bankruptcy court's decision in a split opinion under the clearly erroneous standard of review. On further appeal, the Eight Circuit Court of Appeals determined that the proper standard of review is a *de novo* review and remanded to this Court to conduct this *de novo* review.

## STANDARD OF REVIEW

We review the bankruptcy court's determination of undue hardship *de novo*. *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 553 (8th Cir. 2003).

## DISCUSSION

Pursuant to Section 523(a)(8) of the Bankruptcy Code, a student loan obligation is excepted from discharge "unless excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. ¶ 523(a)(8). The debtor bears the burden of proving undue hardship by a

preponderance of the evidence. *Woodcock v. Chemical Bank, NYSHESC (In re Woodcock)*, 45 F.3d 363 (10th Cir. 1995); *Andrews v. S.D. Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir. 1981); *Standfuss v. U.S. Dept. of Educ. (In re Standfuss)*, 245 B.R. 356, 359 (Bankr. E.D. Mo. 2000); *Kopf v. U.S. Dept. of Educ. (In re Kopf)*, 245 B.R. 731, 734 (Bankr. D. Me. 2000), citing *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Clark v. U.S. Student Aid Funds, Inc.*, 240 B.R. 758, 761 (Bankr. W.D. Mo. 1999).

Congress' intent in excepting student loans from discharge was clear: Congress wanted to prevent the "undeserving student borrower from abusing the bankruptcy process." *Andresen v. Neb. Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127, 130 (B.A.P. 8th Cir. 1999). Congress did not, however, define undue hardship. In the Eighth Circuit, the test for undue hardship requires an inquiry into the totality of circumstances with special attention to the debtor's past, current, and reasonably reliable future financial resources; the reasonable necessary living expenses of the debtor and the debtor's dependents; and any other relevant facts and circumstances unique to the particular bankruptcy case. *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003); *Andrews v. S.D. Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702 (8th Cir. 1981); *Andresen v. Neb. Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127, 139-40 (B.A.P. 8th Cir. 1999).

We identify the three factors relevant to the totality of circumstances inquiry, apply the three prong test, and conclude that the Debtor will not suffer an undue hardship if required to repay the loans under the Income Contingent Repayment Plan.

I. The Debtor's Current and Future Financial Resources

The Debtor's current monthly income working as a laboratory manager is $1,166.66. She only works thirty-two hours per week nine months of the year. She has demonstrated no inability to work full time (forty hours per week) or year round.

If she worked full time nine months out of the year, her monthly income would be $1,510.80. If she worked part time (32 hours per week) year round, her monthly income would be $1,678.66. If she worked full time year round, her monthly income would be $2,098.33. The Debtor may incur additional child care expenses if she increased her work, but she has failed to demonstrate that the additional child care costs would exceed the additional income she could earn. The Debtor has elected to pursue a degree in human services and a minor in social gerontology. This may be a reason she only works part time; however it does not explain why she cannot work year round. Furthermore, to the extent she earns an additional degree, her income potential should increase in the future.

## II. The Debtor's Necessary Reasonable Living Expenses

The Debtor's monthly expenses range from $830 to $1,105. She and her daughter lives modestly with the Debtor's parents. She spends $80 per month to send her child to a private school. She also elects to pursue an additional degree at a cost of between $500 and $800 per course.

## III. Other Circumstances Unique to Debtor's Bankruptcy Case

The Debtor's testimony that she was under a doctor's care for treatment of a condition that began with "flu-like" symptoms and deteriorated thereafter was not contradicted. However, she is currently on a regimen of medication which enables her to work and pursue an additional degree at the same time.

## IV. Application of the Totality of Circumstances Test

The Debtor's monthly income of $1,166.66 exceeds her monthly expenses, which range from $830 to $1,105, by an amount ranging from $61.66 per month to $336.66 per month. This surplus income is sufficient to cover the $54 monthly

6

payment for both the loan to Appellant and the HEAL Loan under the Income Contingent Repayment Plan. Therefore we conclude that the loan to Appellant should not be discharged.

To the extent the repayment stream under the Income Contingent Repayment Plan is insufficient to retire the entire indebtedness, any unpaid balance will be forgiven after twenty-five years. We do not believe a twenty-five year repayment period creates an undue hardship. The repayment period is shorter than that of a standard thirty-year mortgage. Furthermore, the thirty-nine year old Debtor will complete payments before she reaches the retirement age of sixty-five.

This conclusion does not take into consideration the fact that the Debtor could easily supplement her income by working more – either year round or full time or both. Plus we need not second guess her decisions to send her daughter to private school because even with this expense she can afford to repay her student loans under the Income Contingent Repayment Plan.

The Debtor's budget may be strained by tuition incurred in her pursuit of an additional degree. However, her existing student loan creditors should not be forced to supplement the Debtor's further education. To the extent she elects further education, she can increase her income by increasing her work hours to cover tuition costs.

## CONCLUSION

The Debtor bears the burden of proving that excepting her student loans from discharge pursuant to Section 523(a)(8) of the Bankruptcy Code would result in an undue hardship. The Debtor has failed to establish undue hardship. Accordingly, the order of the bankruptcy court discharging the Debtor's student loan obligation to Appellant as an undue hardship on the Debtor is REVERSED.

7

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE
EIGHTH CIRCUIT