# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 05-6018 EA

---

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Janet Lynn Parker, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Janet Lynn Parker, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff-Appellee, | * | Eastern District of Arkansas |
| | * | |
| v. | * | |
| | * | |
| General Revenue Corp., | * | |
| Sallie Mae Services, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Student Loan Guarantee Foundation | * | |
| of Arkansas, | * | |
| | * | |
| Defendant-Appellant. | * | |

---

Submitted: July 7, 2005
Filed: August 8, 2005

---

Before SCHERMER, FEDERMAN and MAHONEY, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Student Loan Guarantee Foundation of Arkansas ("Appellant") appeals the bankruptcy court order discharging the student loan obligation of debtor Janet Lynn Parker ("Debtor"). We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we reverse.

ISSUE

The issue on appeal is whether the Debtor's student loan obligation to Appellant should be discharged as imposing an undue hardship on the Debtor pursuant to 11 U.S.C. § 523(a)(8). We conclude that under the totality of circumstances test such obligation will not impose an undue hardship on the Debtor and therefore should not be discharged.

BACKGROUND

The Debtor is a fifty-one year old divorced woman with no dependents. The Debtor graduated from Arkansas State University in 1991 with a degree in art education. The Debtor financed her education with the student loan which is the subject of this dispute. At the time of her graduation, the Debtor's student loan obligation was $25,000.

After graduation the Debtor actively sought a position as an art teacher; however, she was unable to obtain a teaching position until 1999. Between 1991 and 1999 the Debtor worked at the Jonesboro Human Development Center. During that time the Debtor was unable to make her student loan payments and repeatedly sought and received forbearances and deferments of her student loan debt. As a result, the balance due on the loan, $69,794.17, now greatly exceeds the original loan amount.

In 1999, the Debtor obtained employment as an art teacher with the Cross County School District in Cherry Valley, Arkansas, a poor economic area. She continues to work as an art teacher for that school district. During the summer months when she is not teaching, the Debtor watches her granddaughters, ages 6 through 13, for free to help her daughter out. [Transcript, p.5.] It would be possible for the Debtor to get a paying summer job but "[she's] afraid that it would be very detrimental to [her] daughter." [Transcript, p. 6.] She earns no income other than her teaching salary.

In 2000, the Debtor broke her back in a boating accident. She wore a brace for a year after the accident. She continues to take medication for her back. The injury has not precluded her work as an art teacher. As a result of the accident, the Debtor cannot perform heavy lifting; however, if she does not stand, sit, or lie down for too long the pain is not too bad. [Transcript, p.6.] The Debtor continued to work with horses after the accident, playing with them, grooming them and riding them. The Debtor was unable to run or jump the horses after the accident.

The Debtor separated from her husband in September, 2003, and obtained a final divorce decree on June 14, 2004. She filed a petition for relief under Chapter 7 of the Bankruptcy Code on July 12, 2004. At the time of her bankruptcy petition, the Debtor listed priority tax debts totaling $553 and unsecured non-priority debts totaling $97,153.99. Of the unsecured non-priority debts, $62,718.51 represented the student loan obligation and $927.90 represented the medical expenses of the Debtor. The balance was primarily credit card and retail debt, plus a dental expense for the Debtor's brother. The Debtor also listed secured mortgage debts and indicated her intention to surrender the property subject to the mortgages.

On August 11, 2004, the Debtor filed a complaint seeking the discharge of her student loan obligation as an undue hardship under Section 523(a)(8) of the Bankruptcy Code. The matter was tried on December 7, 2004. At the trial, the

Debtor asked the court to take judicial notice of her bankruptcy schedules and statements and supplemented the record with testimony.

At the time of her bankruptcy filing, the Debtor's annual salary was $23,372.40. Her gross monthly income was $1,947.70 and her net monthly income after deductions for taxes, social security, and health insurance[1] was $1,297.30. In October, 2004, the Debtor's annual salary increased to $30,200. The salary increase was the result of legislation which required the Cross County School District to pay a minimum salary. The Debtor's net monthly income is now $1,443. The Debtor anticipates yearly salary increases of $500.

As of the petition date, the Debtor's monthly expenses, excluding the student loan obligation, were $1,341.86. At the time of trial, the Debtor expected her rent to increase by $75 in January, 2005. The Debtor also anticipated additional expenses for propane gas, water, and garbage pickup. The Debtor was unable to quantify the additional propane cost, estimated garbage pickup costs between $12 and $15 per month, and indicated that water cost "more during the summer, like an average of $15 or $20 a month." [Transcript, p.5.]

The Debtor drives a 1996 Mercury Villager minivan with 182,000 miles. She has transportation costs of $195 per month, which include the costs of transporting her grandchildren to and from Mississippi including travel for the grandchildren to visit their father.

The balance due on the Debtor's student loan as of the date of trial was $69,794.17. If the Debtor were to elect the William D. Ford Consolidation Program offered by the Appellant, the Debtor's monthly payments on account of the student

---

[1] The Debtor has $396.48 deducted from her monthly salary for medical insurance.

loan obligation would be $136.33 based on her income as of the petition date. Payments under this program are calculated based upon the Debtor's ability to pay and are tied to her actual income. After twenty-five years of payments under this program, any remaining balance would be forgiven.

The bankruptcy court found that the Debtor had net monthly income of $1,443 and net monthly expenses of $1,905.95 based on her schedules as of the petition date. [Memorandum Opinion, pp.3-4.] The net monthly expenses included a student loan payment of $564.09 and transportation costs of $195.00. [*Id*., p.4.] The court found that the Debtor's monthly expenses were anticipated to increase by approximately $100 per month for additional rent and utility expenses. [*Id*.] The court found that the Debtor's transportation costs of $195 per month were unnecessarily high due to the transporting of her grandchildren and reduced the Debtor's reasonable necessary monthly transportation expenses by $50. [*Id*., p.9.] The court also imputed to the Debtor additional net income of $100 per month due to her potential for summer employment. [*Id*., p.8.] The court found that if the student loan payment of $564.09 were eliminated from her budget, she would have excess monthly income of $151. [*Id*., p.9.] Nonetheless, the court determined that the student loan debt created an undue hardship for the Debtor and entered its judgment discharging the obligation. The Appellant appealed the discharge of the student loan debt.

## STANDARD OF REVIEW

We review the bankruptcy court's factual findings under the clearly erroneous standard and review its determination of undue hardship *de novo*. *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 553 (8th Cir. 2003).

DISCUSSION

Pursuant to Section 523(a)(8) of the Bankruptcy Code, a student loan obligation is excepted from discharge "unless excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. ¶ 523(a)(8). The debtor bears the burden of proving undue hardship by a preponderance of the evidence. *Woodcock v. Chemical Bank, NYSHESC (In re Woodcock)*, 45 F.3d 363 (10th Cir. 1995); *Andrews v. S.D. Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir. 1981); *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 292 B.R. 635, 638 (B.A.P. 8th Cir. 2003); *Standfuss v. U.S. Dept. of Educ. (In re Standfuss)*, 245 B.R. 356, 359 (Bankr. E.D. Mo. 2000); *Kopf v. U.S. Dept. of Educ. (In re Kopf)*, 245 B.R. 731, 734 (Bankr. D. Me. 2000), citing *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Clark v. U.S. Student Aid Funds, Inc.*, 240 B.R. 758, 761 (Bankr. W.D. Mo. 1999).

As this Court stated in *Long*,

> Congress' intent in excepting student loans from discharge was clear: Congress wanted to prevent the "undeserving student borrower from abusing the bankruptcy process." *Andresen v. Neb. Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127, 130 (B.A.P. 8th Cir. 1999). Congress did not, however, define undue hardship. In the Eighth Circuit, the test for undue hardship requires an inquiry into the totality of circumstances with special attention to the debtor's past, current, and reasonably reliable future financial resources; the reasonable necessary living expenses of the debtor and the debtor's dependents; and any other relevant facts and circumstances unique to the particular bankruptcy case. *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003); *Andrews v. S.D. Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702 (8th Cir. 1981); *Andresen v. Neb. Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127, 139-40 (B.A.P. 8th Cir. 1999).

*Long*, 292 B.R. at 638.

6

The Debtor's current financial resources consist of her net monthly income of $1,443. Her income reflects a substantial increase over her past earnings. As long as the Debtor continues to work as an art teacher for the Cross County School District, future raises are anticipated at $500 per year.

The Debtor has a duty to maximize her income. *Long*, 292 B.R. at 638. Although she is working full-time as a teacher, the Debtor admitted that "it would be possible" for her to get a paying summer job. [Transcript, p.6.] The bankruptcy court found that the Debtor was capable of summer employment and attributed to her additional net income of $100 per month. Although the record lacks any support for this finding, the Debtor has adopted it for purposes of this appeal. [See Appellee's Brief on Appeal, p.17.] Therefore, we hold that the bankruptcy court properly imputed to the Debtor current net monthly income of $1,543.

The Debtor's reasonable monthly living expenses are $1,391.[2] This figure takes into account the bankruptcy court's finding that the Debtor's transportation expenses are excessive because of transporting her grandchildren and includes additional rent and utility payments which the Debtor quantified and which were scheduled to go into effect the month after the trial. No one has challenged these findings which are supported by the evidence.

The Debtor's budget provides her with excess income of $152 per month.[3] This provides sufficient excess income to make payments of $136.33 per month on

_____

[2] The expenses are calculated as follows: $1,905 scheduled expenses, minus $564 student loan payment, minus $50 excess transportation expense, plus $100 increased rent and utility expense, for a total of $1,391 in expenses.

[3] Excess net monthly income equals $1,543 income minus $1,391 expenses. The $1 difference between this number and the trial court's number results from rounding but has no material impact on the outcome.

the student loan under the William D. Ford Consolidation Program. To the extent the Debtor does not fully repay the student loan, any unpaid balance will be forgiven after completion of payments under the William D. Ford Consolidation Program.

Another factor to consider is the Debtor's health. The Debtor has had medical problems in the past, but they do not prevent her from working as an art teacher or from caring for her grandchildren. The Debtor maintains medical insurance for which she pays through salary deduction. Her medical debts total $927.90 and constitute less than one per cent of her total unsecured debt of $97,153.99. Medical problems do not appear to be a major factor contributing to her bankruptcy nor have they prevented her employment as an art teacher.

Where a debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt–while still allowing for a minimal standard of living–then the debt should not be discharged. *Long*, 322 F.3d at 554-55. The Debtor clearly has the ability to make payments on the student loan under the William D. Ford Consolidation Program. The Debtor earned the degree for which she obtained the student loans and is working in her desired field. It is unfortunate that the Debtor's student loan balances are so high today. However, the high balance of the loan is the result of numerous forbearances and deferments received over the years. The Appellant should not be penalized for its past leniency and numerous attempts to work with the Debtor. Repayment of the student loan may be difficult, but the Debtor did not meet her burden of establishing undue hardship.

CONCLUSION

The Debtor bears the burden of proving that excepting her student loans from discharge pursuant to Section 523(a)(8) of the Bankruptcy Code would result in an undue hardship. The Debtor has failed to establish undue hardship. Accordingly, the

order of the bankruptcy court discharging the Debtor's student loan obligation to Appellant as an undue hardship on the Debtor is REVERSED.

---