# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 06-6049WA

_____

In re:                              *
                                    *
Jeri Lynn Lee,                      *
                                    *
        Debtor.                     *
                                    *
Jeri Lynn Lee,                      *
                                    *   Appeal from the United States
        Plaintiff - Appellee,       *   Bankruptcy Court for the Western
                                    *   District of Arkansas
            v.                      *
                                    *
Regions Bank Student Loans;         *
                                    *
        Defendant,                  *
                                    *
Student Loan Guarantee Foundation   *
of Arkansas,                        *
                                    *
        Defendant - Appellant       *

_____

Submitted: September 5, 2006
Filed: September 26, 2006

_____

Before KRESSEL, Chief Judge, SCHERMER, and VENTERS, Bankruptcy
Judges.

_____

VENTERS, Bankruptcy Judge.

This is an appeal of the bankruptcy court's determination that the student loan debt owed to Defendant Student Loan Guarantee Foundation of Arkansas is dischargeable under 11 U.S.C. § 523(a)(8). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(b). For the reasons set forth below, we affirm the decision of the bankruptcy court.[1]

## I.  STANDARD OF REVIEW

We review findings of fact for clear error and conclusions of law *de novo*.[2] Determinations of dischargeability under § 523(a)(8) implicate both standards of review. The ultimate determination of whether excepting a student loan debt from discharge will impose an undue hardship is reviewed *de novo*, but the subsidiary factual findings underpinning the undue hardship analysis are reviewed for clear error.[3]

## II.  BACKGROUND

The Student Loan Guarantee Foundation of Arkansas ("SLGF") disagrees with the bankruptcy court's interpretation of the facts, but the facts themselves are essentially undisputed.

The Debtor attended Southern Arkansas University from 1992 to 2001 where she obtained a bachelor's degree in business administration with a major in finance. She funded her college education with student loans. The dischargeability of those student loans, which now total $47,612.11, is the subject of this proceeding.

---

[1] The Honorable James G. Mixon, United States Bankruptcy Judge for the Western District of Arkansas.

[2] *Kelly v. Jeter* (*In re Jeter*), 257 B.R. 907, 909 (B.A.P. 8th Cir. 2001).

[3] *Cumberworth v. U.S. Department of Education* (*In re Cumberworth*), 2006 WL 2290565 (B.A.P. 8th Cir. 2006).

The Debtor is 31 years old. She is divorced and the custodial parent of two children, ages eleven and six. The record is sparse with regard to the Debtor's health, but it is uncontroverted that she must undergo an unspecified surgical procedure in the near future.

The Debtor filed a chapter 7 bankruptcy petition on June 17, 2003. At the time she filed, the Debtor was working as an accounting clerk making a net salary of $1,336 a month. She was also receiving $366.87 from child support payments. However, the Debtor's financial condition has deteriorated since she received her discharge on September 25, 2003.[4]

In 2004, the Debtor remarried, but that marriage also ended in divorce. She lost her job and remained unemployed for the remainder of 2004. Her 2004 income tax return indicates that her annual income was $11,240 (approximately $936 a month), mostly from unemployment benefits. Six months prior to the trial, the Debtor obtained a job in the admissions department at the Medical Center of South Arkansas. There, she works 32 hours a week and earns just $9.00 an hour. Her gross monthly income is $1,132. She testified that she continues to search for work in her field but has so far been unsuccessful in that search.

The Debtor no longer receives child support. She testified that as of trial, the father of her children was unemployed, living with his family, and without the means to pay her. The Debtor also testified that she does not have any money to pay legal fees to further pursue collection from him, regardless of his apparent inability to pay.

The Debtor owned a home when she filed bankruptcy in 2003, but that home and all contents were destroyed by a fire. The Debtor used the insurance proceeds to

---

[4] The Debtor's bankruptcy case was closed on May 3, 2005, but was reopened shortly after that to enable her to file this adversary proceeding.

pay the indebtedness on the home and to replace some of the personal property that was lost. She now rents a residence, paying more than her previous monthly mortgage payments. The Debtor testified that she has the following expenses:

| Expense | Amount |
|---|---|
| Rent | 400 |
| Electricity | 150 |
| Water | 25 |
| Cable Television | 46 |
| Telephone | 75 |
| Transportation | 100 |
| Food | 350 |
| Clothing | 100 |
| Children's Sports | 20 |
| Medication | 30 |
| Health Insurance | 70 |
| **TOTAL** | $1,366 |

The Debtor does not currently have any expenses for child care because her parents and her grandmother live in the El Dorado area and help care for her two children. Anticipated future expenses include replacing the 1997 vehicle she currently borrows from her parents and a $400.00 deductible toward the surgical procedure she is scheduled to undergo.

SLGF introduced evidence at the trial that if the Debtor's student loan is not discharged, the Debtor would be eligible for a loan consolidation program offering an interest rate of 5.5% and a variety of repayment plans. Under the program's

"Standard Repayment Plan," her monthly payment would be $516.73 for a term of 120 months. An "Extended Repayment Plan" would require a monthly payment of $292.39 for a term of 300 months; a "Graduated Repayment Plan" would require monthly payments of $258.36, gradually increasing over 300 months; and an "Income Contingent Repayment Plan" ("ICRP") would require a payment of $13.03 a month for a maximum of 300 months. Under the ICRP, the Debtor would be required to pay an amount that would fluctuate from year to year based on her ability to pay. If the Debtor paid under this plan for 25 years, any debt remaining would be forgiven. The Debtor testified that she was unaware of the availability of the ICRP until the day of the trial.

Of the total unsecured debt of $62,000.00 listed on the Debtor's schedules, approximately 76% is related to student loans. The Debtor has never made a payment on her student loans.

## III. DISCUSSION

Applying the "totality of circumstances test" prevailing in this jurisdiction, the bankruptcy court examined the debtor's past, present, and reasonably reliable future financial resources; the debtor's reasonable living expenses; and other relevant facts surrounding this debtor's particular circumstances.[5] Upon consideration of these factors, the bankruptcy court concluded that excepting the student loans from discharge would impose an undue hardship on the Debtor.

The Appellant advances two arguments on appeal, both of which center around the ICRP. The first argument assigns error to the bankruptcy court's specific factual finding that the Debtor does not have the financial ability to pay $13.03 a month – the amount required under the ICRP at the Debtor's current income level. The second argument is that the bankruptcy court failed to sufficiently consider the availability

---

[5] *See In re Long*, 322 F.3d 549, 554 (8th Cir. 2003).

of the ICRP (and the debtor's failure to avail herself of it) in its ultimate determination that excepting the debt to SLGF from discharge would impose an undue hardship on the Debtor.  We reject both arguments.

## 1.   The Debtor's Ability to Pay $13.03

The bankruptcy court's determination that the Debtor does not have the current or prospective ability to pay $13.03 a month constitutes a "subsidiary" finding of fact underpinning the bankruptcy court's determination of undue hardship, and that finding cannot be set aside unless it is clearly erroneous.  A finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed.[6]  A reviewing court will not reverse the trial court's findings simply because it is convinced that it would have decided the case differently.[7]  Where there are two permissible views of the evidence, the trial court's choice cannot be clearly erroneous.[8]

Under this standard we cannot say that the bankruptcy court's finding that the Debtor does not have the current or prospective ability to pay $13.03 a month was clearly erroneous.  Admittedly, there is some appeal to SLGF's argument that a little belt tightening would enable the Debtor to pay the modest sum of $13 a month, especially considering that the Debtor is young, well educated, generally healthy, and appears to have the potential to make more money and to reduce child-related

---

[6] *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

[7] *Id*.; *Handeen v. LeMaire* (*In re Le Maire*), 898 F.2d 1346, 1349 (8th Cir.1990)(en banc).

[8] *Id*.

expenses (such as food and activity fees) in the future. But the evidence in the record also supports the bankruptcy court's assessment of the Debtor's financial situation.

Currently, the Debtor's expenses exceed her gross monthly income by $214. Even eliminating the two expenses SLGF takes issue with in this appeal – $75 for phone services and $46 for cable television – the Debtor would still run a deficit each month. The rest of the Debtor's expenses are reasonable, if not meager.

The bankruptcy court's determination that the Debtor's future financial resources will be insufficient to enable her to repay her debt to SLGF is also supported by evidence in the record. The Debtor has never earned more than $10.50 an hour, and it does not appear that she has the skills or the experience to earn significantly more, especially considering that she is somewhat tied to El Dorado, Arkansas, where her family provides her with childcare. Her prospects might be brighter if she moved to a bigger city, but the additional income would likely be offset by increased housing and childcare costs. The bankruptcy court's finding that the Debtor is unlikely to receive child support in the future is a plausible and appropriate extrapolation of the evidence showing that the father of her children has been unemployed for more than a year.[9] Finally, we find no error in the bankruptcy court's consideration of a likely future increase in the Debtor's transportation expense due to the age and condition of her car.[10]

---

[9] *See Brown v. U.S.A. Group Loan Servs.* (*In re Brown*), 234 B.R. 104, 108 (Bankr. W.D. Mo. 1999) (assessing likelihood of future child support based on history of non-payment); *Balm v. Sallie Mae Serv. Corp.* (*In re Balm*), 333 B.R. 443, 449 (Bankr. N.D. Iowa 2005) (refusing to consider any potential child support income as a future financial resource because it would be speculative and support funds were arguably for the child's needs, not the parent's student loan payments).

[10] *See, e.g.*, *In re Howe*, 319 B.R. 886, 893 (B.A.P. 9th Cir. 2005) (allowing the debtor a $203 monthly expense for saving to replace failing car).

In sum, we find no reversible error in the bankruptcy court's finding that the Debtor does not have the current or prospective ability to repay her debt to SLGF at the rate of $13.03 a month.

## 2.    Consideration of the ICRP

SLGF's second argument on appeal is that the bankruptcy court failed to adequately consider the availability of the ICRP in its determination of undue hardship.  We reject this argument for two reasons.

First, and most saliently, the SLGF's argument is factually inaccurate – the bankruptcy court squarely considered the fact that the Debtor would only have to pay $13.03 a month under the ICRP at her current income level (even though the Debtor testified that she only learned of the ICRP on the day of the trial), but it concluded that the Debtor did not have the current or prospective ability to pay even $13.03.  As stated above, that finding will not be reversed.

Second, SLGF's argument overstates the weight due the ICRP under the totality of circumstances test applied in this jurisdiction.  Several bankruptcy courts have opined, and we agree, that the availability of the ICRP is "but one factor to be considered in determining undue hardship, but it is not determinative."[11]  Placing too much weight on the ICRP would have the effect in many cases of displacing the individualized determination of undue hardship mandated by Congress in § 523(a)(8) since the payments on a student loan will almost always be affordable, *i.e.*, not impose an undue hardship on a Debtor.  SLGF admits as much, stating that the ICRP "essentially mitigates some of the courts (sic) need to look at future resources, because if the debtor does not have the money to pay, the debtor will not be required to pay."

___

[11] *See, e.g.*, *In re Korhonen*, 296 B.R. 492, 496 (Bankr. D. Minn. 2003); *In re Thomsen*, 234 B.R. 506, 509-10 (Bankr. D. Mont. 1999).

But the Debtor's current and prospective ability to pay, while important, is not the only consideration under the totality of circumstances test.[12]

Moreover, the bankruptcy court's finding that even the minimal payment under the ICRP was beyond the Debtor's means highlights a key difference between the ICRP and the undue hardship inquiry under § 523(a)(8), which is that they employ different standards for measuring a debtor's ability to pay. Under the ICRP, a debtor is *presumed* to have the ability to pay 20% of the difference between her adjusted gross income and the poverty level for her family size, or the amount the debtor would pay if the debt were repaid in twelve years, whichever is less. In contrast, a bankruptcy court engages in a case-by-case analysis of a debtor's income in relation to her reasonable expenses.[13] In this case, the two analyses yielded conflicting results. SLGF determined that under the ICRP the Debtor could pay $13.03 a month, but the bankruptcy court determined that the Debtor could not currently pay anything on her student loans and in fact ran a deficit each month just paying her reasonable living expenses.

Finally, the availability and terms of the ICRP should not be given undue weight under the totality of circumstances analysis because it serves a fundamentally different purpose than the discharge provisions (and exceptions thereto) of the

---

[12] *See, e.g.*, *In re Reynolds*, 425 F.3d 526, 533-34 (8th Cir. 2005) (holding that the bankruptcy court properly considered the impact on the debtor's mental health of discharging a student loan debt.)

[13] While it is always dangerous to ascribe meaning to Congress's inaction, we find it interesting, if not significant, that Congress did not include a mathematical formula for determining undue hardship under §523(a)(8) even in the most recent amendments to the bankruptcy code, which did enact a mathematical formula for determining an above-median income chapter 13 debtor's disposable income. *See* 11 U.S.C. § 1325(b)(3) as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

Bankruptcy Code. A survey of the legislative history behind legislation related to the ICRP indicates that its primary goal is to assist borrowers in avoiding default.[14] In contrast, the Bankruptcy Code serves to provide a fresh start to "honest but unfortunate debtors," most of whom have already defaulted on their obligations (including student loans).[15] The ICRP provides temporary relief from the burden of a student loan, but it does not offer a fresh start. Some aspects of the ICRP might even be viewed as inimical to the goals of the fresh start because the ICRP allows for negative amortization of the student loan debt and a potentially significant tax bill if the student loan is ultimately forgiven after 25 years.[16]

Section 523(a)(8) evidences Congress's intent that student loans should be more difficult to discharge than general unsecured debts, but it also provides an avenue for obtaining a discharge of those debts. And the ICRP cannot be allowed to foreclose

---

[14] *See* S. Rep. 102-447, at 371-72 (1992) ("It is the purpose of this part to examine the feasibility of a direct loan program which uses the income contingent repayment method in order to increase the economic and full use of direct student loan funds."); H. Rep. 103-111, at 158 (1993) (stating that the purpose of income contingent repayment is to prevent student loan obligations from foreclosing community service-oriented career choices); H. Rep. 109-231, at 141 (2005) (stating that the purpose of income contingent repayment is avoiding default on direct loans).

[15] *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) ("This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.").

[16] *See www.ed.gov/offices/OSFAP/DirectLoan/RepayCalc/ dlindex2 .html* (Department of Education website stating, "If you haven't fully repaid your loans after 25 years under this plan, the unpaid portion will be discharged. You will, however, have to pay taxes on the amount that is discharged.") *See also*, *In re Korhonen*, 296 B.R. at 496-97.

that avenue – which would be the result of SLGF's argument taken to its logical conclusion.

## IV. CONCLUSION

For the reasons stated above, we affirm the bankruptcy court's decision.

SCHERMER, Bankruptcy Judge, concurring in result

I disagree with my colleagues' opinion as to the weight to be afforded the ICRP. As stated by the majority, SLGF's second argument on appeal is that the bankruptcy court failed to adequately consider the availability of the ICRP in its determination of undue hardship. I agree with the majority that the argument is factually inaccurate and that the bankruptcy court squarely considered that factor in reaching its decision. If the majority opinion ended there, I would merely concur in the result as explained below. However, the majority decision does not stop there. Rather, it includes my colleagues' opinion as to the weight to be afforded the ICRP in the student loan dischargeability context. I do not agree with the opinion expressed by the majority.

The Supreme Court has instructed us that when the Bankruptcy Code's meaning is plain, the sole job of a court is to enforce the statute according to its terms.[17] In the student loan context, Congress has limited the discharge of student loans in bankruptcy to situations where continuing financial responsibility for the student loan will impose an ***undue*** hardship on the debtor and the debtor's dependents.[18] The debtor must face more than mere or ordinary hardship in order to discharge a student

---

[17] *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000); *U.S. v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989).

[18] 11 U.S.C. § 523(a)(8) (emphasis added).

loan.  The debtor must establish **undue** or **excessive** hardship before a student loan may be discharged.  If the budget demonstrates that a debtor can afford payments under the ICRP, continued liability on the student loan does not create an undue hardship.  I disagree with the majority's assessment that the ability to afford payments under the ICRP is merely a single factor among many to be considered in the student loan dischargeability context.  Instead, absent compelling evidence to the contrary, a debtor's ability to afford payments under the ICRP is determinative of the issue: continued liability for a student loan where a debtor can afford the payments does not create an undue hardship.

Despite my philosophical difference with my colleagues' view on the ICRP, I concur in the result.  I am reluctant to discharge the student loan of a healthy thirty-one year old with no disabilities.[19]  However, this case is distinguishable from the many cases where I have concluded that the student loan did not create an undue hardship in one important aspect.  In each of those cases, the debtor's budget afforded the ability to make minimal payments toward the student loan debt under the ICRP.[20] That is not the case in the present situation where the Debtor's budget does not permit payment of the amount which would be due under the ICRP, nor does the Debtor face any prospect which would permit repayment in the reasonably foreseeable future.  Accordingly, I concur in the result.

---

[19] See, e.g. *Parker v. Gen. Revenue Corp. (In re Parker)*, 328 B.R. 548 (B.A.P. 8th Cir. 2005)(refusing to discharge student loan of fifty-one year old); *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 292 B.R. 635 (B.A.P. 8th Cir. 2003)(refusing to discharge student loan of healthy thirty-nine year old); *Cline v. Ill. Student Loan Assistance Ass'n (In re Cline)*, 248 B.R. 347, 351-56 (B.A.P. 8th Cir. 2000)(Schermer, J., dissenting)(thirty-five year old with no disability).

[20] *Parker*, 328 B.R. at 553; *Long*, 292 B.R. at 639; *Cline*, 248 B.R. at 352.