# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 05-6030NI

_____

| | | |
|---|---|---|
| In re: James E. Cumberworth Jr., and Leah H. Cumberworth, | * * * | |
| Debtors. | * * * | |
| Leah H. Cumberworth, | * * | Appeal from the United States Bankruptcy Court for the |
| Plaintiff-Appellee | * * | Northern District of Iowa |
| v. | * * * | |
| The United States Department of Education, | * * * * * | |
| Defendant-Appellant | * * | |

_____

Submitted: June 15, 2006
Filed: August 10, 2006

_____

Before KRESSEL, Chief Judge , MAHONEY, and McDONALD, Bankruptcy
Judges

_____

McDONALD, Bankruptcy Judge.

-1-

The United States Department of Education (the "DOE") appeals from the judgment of the bankruptcy court[1] determining that Debtor's obligation to the DOE on her student loans was discharged under 11 U.S.C. §523(a)(8). We affirm.

## I.

Debtor Leah E. Cumberworth ("Leah") attended the University of Iowa from 1984-1992. She obtained a bachelor's and master's degree in liberal studies as well as a master's degree in nursing during that time. Leah procured several student loans totaling approximately $34,000.00 to finance her education. (collectively the "Student Loans").

After obtaining her master's degree in nursing in 1992, Leah worked for the Veteran's Administration ("VA") hospital in Iowa City, IA as a nurse. Leah made timely payments on the Student Loans from 1992 until 1997. Leah then defaulted on her obligations under the Student Loans sometime in 1997 or 1998. At the time of Leah's default, the primary lenders assigned the Student Loans to the DOE.

Shortly after the DOE was assigned the Student Loans, it and Leah negotiated an income contingent repayment plan whereby Leah paid $208.00 per month. Leah regularly made the payments under this alternative plan from 1998 through December 2000. The DOE then notified Leah in January 2001 that it was reviewing her case and requested that Leah provide it with information concerning her financial situation. The DOE claimed that Leah failed to provide it with all the financial information it requested and demanded that Leah begin making regular monthly payments of $580.00 per month in March 2001.

---

[1] The Honorable Paul J. Kilburg, Chief Judge, United States Bankruptcy Court for the Northern District of Iowa.

Both Leah and her husband James Cumberworth ("James") attempted to supply the information that the DOE claimed was incomplete. Leah and James also attempted to negotiate another income contingent repayment plan. These negotiations, however, ultimately failed. Leah made no payment on the Student Loans after January 2001 with the exception of one payment of $750.00 in January 2002. Thus, by the time Leah filed the instant adversary complaint in February 2003, the principal balance on the Student Loans including penalties and accrued interest was $64,233.89.

Leah underwent surgery in January 2001 to alleviate severe pain in her lower back. The operation, however, failed to alleviate the pain. The Social Security Administration (the "SSA") determined that Leah was 100% permanently disabled based on her treating physician's recommendation. Leah also retired from the VA because of her disability. Thus, Leah receives both social security disability income and a federal pension.

James suffers from severe bipolar disorder resulting from post-traumatic stress disorder connected to his military service in Viet Nam. James additionally has had both hips and his left knee replaced and underwent quadruple bi-pass surgery. Based on these mental and physical conditions, the SSA also classified James as 100% permanently disabled. James, therefore, receives both social security disability income and VA disability income.

At the time of trial, Leah received $1,417.00 per month in social security disability income and $728.00 per month from her federal pension. James received VA disability income in the amount of $ 2,317.00 per month and $426.00 per month in social security disability income.

It is undisputed that neither Leah nor James will be able to obtain employment in the future because of their respective disabilities. Thus, there is no possibility that

the couple's future income will increase in real dollars because any future increase will be limited to cost of living adjustments. It is also undisputed that James and Leah's monthly expenses at the time of trial were $4,148.00, excluding Leah's obligation on the Student Loans.

Just prior to trial, the VA declared James incompetent to manage his affairs and appointed a fiduciary, Gregory Epping ("Epping"). Epping testified at trial that a fiduciary may not pay the personal debt of a beneficiary's spouse absent express approval from the VA. Thus, absent such approval, Epping remarked that he could only pay James' portion of the household's total expenses with James' disability income.

The bankruptcy court concluded that it would be unlikely that Leah would be able to utilize any portion of James' VA disability income to meet her obligation on the Student Loans. The bankruptcy court further noted that Epping's testimony established that in all probability, Epping would be limited to paying James' portion of the household's expenses with James' disability income. Thus, the bankruptcy court reduced the household's total expenses by one-half in its undue hardship analysis. The bankruptcy court additionally found that Leah's monthly payment on the Student Loans would be $580.00 per month for a period of twelve years.

Given this financial framework, the bankruptcy court determined that Leah had monthly income of $2,145.00. Also, her portion of the household's total expense was $2,074.25 ($4,148.50/2). Thus, the bankruptcy court determined that Leah has discretionary income of only $70.00 per month while her monthly payment on the Student Loans is $580.00 per month.

The bankruptcy court also observed that Leah and James attempted in good faith to negotiate with the DOE to lower the monthly payment on the Student Loans but failed to reach an agreement. Additionally, the bankruptcy court found that both

James and Leah are completely and permanently disabled and Leah did make a good faith effort to repay the Student Loans while she was employed.

The bankruptcy court held that given these facts, requiring Leah to repay the debt resulting from the Student Loans would constitute an undue hardship under 11 U.S.C. §523(a)(8). The court, therefore, entered judgment in favor of Leah and found that Leah's debt contained in the Student Loans was discharged. This appeal followed.

## II.

The determination of whether requiring Leah to repay her debt on the Student Loans constitutes an undue hardship under 11 U.S.C. §523(a)(8) is a question of law that we review *de novo*. Long v. Ed. Credit Mgmt. Co (In re Long), 322 F.3d 549, 553 (8th Cir. 2003). The bankruptcy court's subsidiary factual findings that underpins its undue hardship analysis, however, are subject to the clearly erroneous standard of review. Reynolds v. Pennsylvania Higher Ed. Assistance Agency (In re Reynolds), 425 F.3d 526, (8th Cir. 2005); Bankr. R. 8013. Accordingly, we will not upset the bankruptcy court's subsidiary factual findings unless, after reviewing the entire record, we are left with the definite and firm conviction that the bankruptcy court made a mistake. Shodeen v. Airline Software, Inc. (In re Access Air, Inc.), 314 B.R. 386, 391 (B.A.P. 8th Cir. 2004).

## III.

Section 523(a)(8) states in relevant part that any debt resulting from an educational loan made, insured or guaranteed by a governmental agency is excepted from the debtor's general discharge unless "excepting such debt from discharge...will impose an undue hardship on debtor and debtor's dependants." The debtor has the

burden of establishing by a preponderance of the evidence that excepting her debt on the student loan from discharge will impose such an undue hardship. Long v. Ed. Credit Mgmt. Corp. (In re Long), 292 B.R. 635, 638 (B.A.P. 8th Cir. 2003).

The undue hardship test under §523(a)(8) in this Circuit is fact intensive and requires the court to examine the totality of the circumstances of each case. Long, 322 F.3d at 554. The bankruptcy court should consider the following factors in its fact intensive analysis: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependents' reasonably necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case. Id.

IV.

*A. The bankruptcy court properly considered Leah's past, present and future financial resources.*

The DOE first argues that the bankruptcy court failed to adequately consider Leah's financial resources in its analysis for two reasons. The DOE first contends that the bankruptcy court erred in excluding James' disability income from its undue hardship analysis. Both parties and the bankruptcy court agree that generally, a bankruptcy court must include the non-borrower spouse's income in its undue hardship analysis.[2] Sweeny v. Ed. Credit Mgmt. Corp. (In re Sweeny), 304 B.R. 360,

---

[2] The Court notes that there is authority in this Circuit that the non-borrower spouse's income should not be considered, provided that both spouses contribute equally to the household's income. Reynolds, 425 F.3d at 535-36 (Bright, J., Concurring). Here, because neither party raised this issue on appeal and the bankruptcy court did not utilize James' VA disability income, we need not address this issue. See Id. at 534.

363 (D. Neb. 2002); <u>Bray v. Edu. Credit Mgmt. Corp (In re Bray)</u>, 332 B.R. 186, 192-93 (Bankr. W.D. Mo. 2005).

The bankruptcy court here, however, excluded James' VA disability income because it found that in all likelihood, James' VA disability income could only be used to pay his portion of the household's monthly expenses. The DOE argues that this finding is not supported by the evidence. We disagree.

The DOE notes that Epping testified that because the VA appointed him as James' fiduciary the day prior to trial he was unfamiliar with the Cumberworths' financial situation. The DOE also points out that Epping stated that under certain circumstances, the VA would allow a fiduciary to utilize the veteran's disability benefit to pay the personal debt of a spouse. The DOE argues that because Epping had no knowledge of the Cumberworths' situation, the bankruptcy court erred when it concluded that it was unlikely that the VA would allow Epping to utilize James' VA disability income to pay Leah's debt on the Student Loans.

The DOE's argument fails because the bankruptcy court must examine Leah's reasonably reliable future financial resources. <u>Long</u>, 322 F.3d at 554. Thus, although the DOE did produce evidence that there is a theoretical possibility that Epping could use James' income to pay Leah's personal debt at some unspecified point in the future, the question before the bankruptcy court was whether that possibility was reasonably likely in the near future. The bankruptcy court answered that question in the negative and we find that the record amply supports that conclusion for the following reasons.

First, as mentioned earlier, Epping testified that he did not have the ability to expend any of James' VA disability benefit to pay Leah's debt on the Student Loans absent express approval from the VA. Additionally, there is no evidence in the record as to the procedure that Epping would follow in making such a request or the length of time it would take to procure the VA's approval. In short, the uncontroverted

evidence adduced at trial is that absent some unspecified action that would take an unknown period of time to complete, Epping cannot use James' disability income to pay Leah's debt on the Student Loans.

Epping additionally testified that if James had to be placed in a long-term care facility operated by the VA, the VA would likely require James to expend all of his income to cover his expenses. As discussed above, James is beset with a multitude of mental and physical aliments and there is certainly a reasonable probability that James may need long-term care at some point in the future. Thus, the evidence in the record suggests that there is a reasonable likelihood that James will consume all of his income at some point in the future to pay for his own care.

Our review of this record does not leave us with a definite and firm conviction that it is reasonably likely that Epping will be able to use James' disability income to pay Leah's debt on the Student Loans anytime in the near future. Accordingly, we cannot find that the bankruptcy court's factual determination is clearly erroneous.

The DOE also asserts that the bankruptcy court applied the wrong standard in evaluating Leah's financial resources. The DOE contends that the bankruptcy court should have required Leah to demonstrate that repaying her debt on the Student Loans would result in a certainty of financial hopelessness or would cause an indefinite and extraordinary hardship. It is true that some bankruptcy courts have applied such tests while still nominally using the totality of the circumstances test. See e.g. Randall v. Nw. Student Loan Serv., 255 B.R. 570, 577 (Bankr. D.N.D. 2000). The totality of the circumstances test properly applied, however, is not nearly as rigid as either of these tests.

As discussed above, the totality of the circumstances test is fact intensive and requires the bankruptcy court to examine the unique facts and circumstances of the particular case. Reynolds, 425 F.3d at 532; Long, 322 F.3d at 554-55; Ford v.

-8-

Student Loan Guar. Found. of Ark. (In re Ford), 269 B.R. 673, 678 (B.A.P. 8th Cir. 2001); Cline v. Illinois Student Loan Assistance Assoc. (In re Cline), 248 B.R. 347, 351 (B.A.P. 8th Cir. 2000); Andersen v. Nebraska Student Loan Program, Inc. (In re Andersen), 232 B.R. 127, 140 (B.A.P. 8th Cir. 1999). This analysis may include non-economic factors in appropriate circumstances. Reynolds, 425 F.3d at 532; Andersen, 232 B.R. at 139-40. Thus, the proper analysis requires the bankruptcy court to closely examine the individual facts of a particular case and not mechanically apply a rigid rule. The bankruptcy court applied such a fact intensive inquiry here. Accordingly, we find that the bankruptcy court properly applied the totality of the circumstances test in this case.

*B. The bankruptcy court did not err in finding that the Cumberworths' expenses were reasonable and necessary.*

The DOE next maintains that the bankruptcy court erred in finding that the Cumberworths' expenses were reasonable and necessary. The essence of the DOE's argument here is that the bankruptcy court was obligated to examine the Cumberworths' expenses on a line-by-line basis and reduce any expense that was not reasonable and necessary. The totality of the circumstances test, however, only requires the bankruptcy court to examine whether the debtor's total monthly expenses are reasonable and necessary given the particular facts and circumstances of the case. Cline, 248 B.R. at 351.

The bankruptcy court here specifically found that although some of the Cumberworths' expenses may have been discretionary, their overall monthly expenses were reasonable and necessary. Thus, the bankruptcy court applied the correct test in examining whether the Cumberworths' expenses were reasonable and necessary.

The DOE alternatively argues that even if the bankruptcy court applied the correct test, it still erred in finding that the Cumberworths' overall expenses were reasonable and necessary. The record does contain evidence that supports the DOE's contention. We note for example that Leah provides $100.00 per month in support for a grandchild although she has no legal obligation to do so; the couple makes $120.00 per month in charitable contributions; and also expends $260.00 per month for recreation and entertainment. Also, the Cumberworths' monthly expenses of $4,148.00 per month are atypically high for a debtor seeking to discharge her student loan debt under §523(a)(8). See Rafeal I. Padro & Michelle R. Lacey, *Undue Hardship in the Bankruptcy Courts: An Empirical Assessment of the Discharge of Educational Debt*, 74 U. CIN. L. REV. 405, 454 (2005) (noting that the median monthly household expenses for a debtor seeking the discharge of education debt is $2,251.00 per month with the 75th percentile at $2,762.82 per month).

But under the clearly erroneous standard of review, we may only upset the bankruptcy court's factual finding if, after reviewing the complete record, we are left with a definite and firm conviction that the finding is incorrect. In re Apex, 406 F.3d 538, 541 (8th Cir. 2005). Accordingly, the mere fact that the evidence in the record would support the opposite result is not sufficient to disturb the bankruptcy court's factual findings. United States v. Sanders, 424 F.3d 768, 778 (8th Cir. 2005). Here, the evidence in the record is sufficient to sustain the bankruptcy court's factual finding that the Cumberworths' overall expenses were reasonable and necessary.

First, the record reflects that the Cumberworths reduced their total monthly expenses by $1,600.00 per month from the petition date to the trial date, which was a 27 % reduction. This reduction included the Cumberworths selling their residence and moving into lower cost rental property. The fact that the Cumberworths significantly reduced their monthly expenses post-petition, including moving into lower cost rental property, is evidence that their total current living expenses are

reasonable and necessary.  See  Soler v. United States (In re Soler), 261 B.R. 444, 462 (Bankr. D. Minn. 2001).

The second factor that supports the bankruptcy court's conclusion is that the only evidence in the record as to what constitutes the Cumberworths' reasonable and necessary expenses given their unique circumstances was the Cumberworths' own testimony.  Both Leah and James testified that some of the specific expenses that the DOE questioned were in fact reasonable and necessary given their particular situation.

For example, both Leah and James testified that their travel and automobile expenses were high because they made short,  but frequent trips to visit their children and grandchildren who reside nearby.  James further testified that the couple's food budget was unusually high because he is on a restrictive diet due to his pervasive heart disease.  James additionally noted at trial that the couple is forced to expend $300.00 per month in out-of-pocket medical expenses because of both his and Leah's chronic medical conditions.

The DOE did not offer any contradictory evidence as to whether any of the Cumberworths' expenses were reasonable and necessary.  Rather, the DOE made the bald assertion in its reply brief that some of the Cumberworths' expenses "appear to be unreasonable".  The DOE failed, however, to produce any evidence as what would be reasonable give the Cumberworths' special circumstances.  Also, as noted above, the Cumberworths did offer explanations as to why at least some of their expenses appeared to be unusually high and we defer to the bankruptcy court's ability to judge the credibility of that testimony.  See Bankr. R. 8013.  Thus, we find that the bankruptcy court's determination that the Cumberworths' overall expenses given their unique circumstances were reasonable and necessary was not clearly erroneous.

*C.  The bankruptcy court properly considered "other factors" in its analysis.*

The DOE additionally attacks the bankruptcy court's judgment arguing that the bankruptcy court failed to properly consider "other factors". The DOE first contends that Leah was not entitled to a discharge of her debt on the Student Loans because she failed to qualify for a lower monthly payment under an income contingent repayment plan. The DOE maintains that Congress established what constitutes undue hardship under 11 U.S.C. §523(a)(8) in enacting the qualifications for income contingent repayment plans for federally guaranteed student loans. The DOE's argument misses the mark in that it improperly equates the qualifications in the income contingent repayment guidelines with what constitutes undue hardship under §523(a)(8).

Under the income contingent repayment guidelines, a borrower must make some payment towards a student loan if the borrower's income is at or above the federal poverty level.  20 U.S.C. §1087e(d)(1); 34 C.F.R. §§685.208-685.209.   The undue hardship analysis, however, requires the court to examine the particular facts and circumstances of the debtor's case and determine whether requiring the debtor to repay the debt on the student loan would constitute an undue hardship.  Long, 322 F.3d at 554.  We find that these two standards are different in two important respects.

First, the undue hardship analysis looks at whether the debtor has sufficient income to make monthly payments on the student loan in question after deducting her ***reasonably necessary*** living expenses now and in the future.  See Long, 322 F.3d at 554. (Emphasis added).  As one commentator has observed, because a person cannot pay for her reasonably necessary living expenses if her income is at the federal poverty level, the standard contained in the income contingent repayment guidelines is different from the undue hardship standard under §523(a)(8).  ALAN N. RESNICK & HENRY J. SOMMER, COLLIER On BANKRUPTCY ¶ 523.14 (15th rev. ed.).

Second, the income contingent repayment guidelines only examine the debtor's current financial situation. The undue hardship analysis on the other hand requires the bankruptcy court to examine the debtor's present and future financial prospects. Long, 322 F.3d at 555. Thus, while the income contingent repayment guidelines are static, the undue hardship analysis is dynamic in that it is forward-looking.

Thus, the fact that a debtor may or may not be eligible to take advantage of an income contingent repayment program is not determinative of whether requiring the debtor to repay the student loan constitutes an undue hardship under §523(a)(8). See Ford, 269 B.R. at 678-79. Rather, as we have previously held, the debtor's ability or inability to take advantage of an income contingent repayment plan is simply one of many factors that the bankruptcy court should consider. Id.

The DOE also maintains that the Leah did not in good faith attempt to lower her monthly payment by qualifying for an income contingent repayment plan. As just stated, we agree that the debtor's good faith effort to lower her monthly payment by qualifying for an income contingent repayment plan is a factor in the undue hardship analysis. Id. Here, however, the record amply supports the bankruptcy court's finding that Leah did attempt in good faith to qualify for a lower monthly payment under an income contingent repayment plan.

Both Leah and James testified that Leah attempted to lower her payment by exploring different income contingent repayment plans with the DOE but failed in that attempt. Leah and James additionally testified that the last offer from the DOE was a payment of $580.00 per month over a twelve year period. The DOE produced no evidence to controvert the testimony of either Leah or James. Thus, the bankruptcy court properly considered Leah's good faith effort to lower her monthly payment on the Student Loans under an income contingent repayment plan.

The DOE finally argues that the bankruptcy court erred in considering other non-economic factors in its hardship analysis. It is true that the undue hardship analysis under §523(a)(8) should begin with determining whether the debtor has the ability to pay the student loan debt and meet her reasonable and necessary living expense. See Long, 322 F.3d at 554-55. The DOE's contention, however, fails to appreciate the flexibility that the bankruptcy court possesses under the totality of the circumstances test, which includes the ability to examine non-economic factors in appropriate cases. Id.; Reynolds, 425 F.3d at 532.

Here, the bankruptcy court cited Leah's good faith effort to repay the Student Loans while she was employed and Leah's complete and permanent disability in its analysis. A debtor's good faith attempt to repay the student loan debt while employed is certainly a non-economic factor that a court may consider in its undue hardship analysis. In re Roberson, 999 F.2d 1132, 1136 (7th Cir. 1993); Faktor v. United States (In re Faktor), 306 B.R. 256, 264 (Bankr. N.D. Iowa 2004).

With respect to Leah's disability, the DOE argues that this factor is irrelevant because it concedes that Leah will never be able to work again and argues that the Cumberworths' retirement and disability income is sufficient to repay the Student Loans. Thus, the DOE maintains that Leah's inability to work because of her permanent disability has no bearing on whether requiring her to repay the Student Loans would cause an undue hardship.

Although Leah's disability may not have an impact on the financial analysis in this case, Leah's disability is relevant because it eliminated her ability to increase her income through no fault of her own. Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews), 661 F.2d 702,704-05 (8th Cir. 1981); Ford, 269 B.R. at 677; see also Andersen, 232 B.R. at 139 (noting that the policy underlying §523(a)(8) is to prevent a debtor from discharging student loan debt while on the brink

of a lucrative career). Thus, the bankruptcy court did not err in considering Leah's complete and permanent disability.

V.

In conclusion, after reviewing the record, we cannot find that the bankruptcy court's subsidiary factual findings are clearly erroneous. The bankruptcy court also properly considered Leah's: (1) good faith attempt to negotiate an income contingent repayment plan with the DOE; (2) payment history on the Student Loans while she was employed; and (3) complete and permanent disability, which prevents her from increasing her income through no fault of her own.

Our *de novo* review of this record indicates that Leah established by a preponderance of the evidence that forcing her to repay the debt on Student Loans would constitute an undue hardship under §523(a)(8). The bankruptcy court, therefore, did not err in finding that Leah's debt on the Student Loans were discharged pursuant to §523(a)(8). Thus, the bankrupt court's judgment is affirmed.

---